[No. 4694.]

## THE CENTRAL TRUST COMPANY v. CULVER.

1. **Evidence—Exclusion of Material.**

The exclusion of material and competent evidence will jus-
tify a reversal unless it appears beyond a reasonable doubt that
the exclusion of such evidence could not have affected the result.

2. **Evidence—Declarations—Water Rights—Abandonment.**

On the issue as to whether or not a water right priority
awarded to a certain ditch had been abandoned, where the
evidence showed the disuse of the ditch, declarations of the
owner of the ditch and priority when the decree fixing the prior-
ity was entered, made at various times during his ownership
when using water for irrigation, to the effect that he claimed to
be the owner of the priority in question and was then exercising
his rights thereunder by irrigating therefrom through other
head gates and ditches, were admissible to show that in his
disuse of the ditch it was not his intention to abandon the
water right decreed thereto, but was his intention to exercise
his right by diversion through other head gates.

*Appeal from the District Court of Boulder County:
Hon. James E. Garrigues, Judge.*

Messrs. TALBOT, DENISON & WADLEY, for appel-
lant.

Mr. H. M. MINOR and Mr. ALBERT DAKAN, for
appellee.

Mr. JUSTICE GUNTER delivered the opinion of the
court.

This was an action by appellee against appellant
to restrain appellant from diverting from the Little
Thompson river water for the purpose of irrigation
awarded to ditch No. 9 under priority No. 10. After
issue joined the case was tried to the court without
the aid of a jury. The only issue involved was one
of fact, that is, whether or not the rights awarded
as priority No. 10 under a decree rendered in May,
1883, to the predecessors in title of appellant to such
priority had been abandoned.

There was evidence for appellee that ditch No. 9 had not been used since the date of said decree in 1883. There was also evidence for appellee tending to show that the priority so awarded, that is, priority No. 10, had not been used in any manner since the date of said decree. There was evidence on behalf of appellee tending to show that such priority had been abandoned.

There was evidence for appellant tending to show that the priority in question had been claimed, owned and applied to a beneficial use by the predecessors in title of appellant until 1897, and that such priority had been availed of by diverting the waters represented by the priority through the Culver and Mahoney ditch, the supply lateral, the Meinig ditch and the Blore ditch No. 1.

Appellant contends that although the original ditch might have been disused, the priority awarded to it had been availed of by diversions and applications to a beneficial use made through other adjacent headgates.

The court found this issue—abandonment—upon evidence substantially conflicting for the plaintiff below (appellee here). In the course of its summing up, the trial court observed: "I will say that there are many things in connection with this case not clear to my mind, many things that are unsatisfactory, but I have to do the best I can with what I have before me."

This from the court's opinion goes in support of our conclusion that its finding and judgment was based upon evidence substantially conflicting, and while we disclaim any intent to assume the function of the trial court and pass upon the weight of the evidence, and disclaim any intention of intimating what the judgment of the court should have been, yet we are justified in saying that the evidence was

substantially conflicting. This being true, we are unable to say what effect was had upon the finding and judgment of the court by the exclusion of certain material evidence to which we will hereinafter refer.

The courts of this state have gone to the extent of holding that the exclusion of material evidence will justify a reversal unless it appears beyond a reasonable doubt that the refusal of such evidence could not have affected the result; in other words, it must appear beyond doubt that the exclusion of material evidence could not have worked prejudice.—*Henry v. Colorado Land and Water Company*, 10 Colo. App. 14, 23.

We cannot declare that had this evidence been admitted the court would have reached the same conclusion that it did without our invading the province of the trial court.

The material and competent evidence rejected was the following: W. R. Blower was the owner of priority No. 10 and ditch No. 9 at the time the decree fixing the priority was entered; that is, in 1883. According to testimony offered for appellant Blower availed himself of this priority as the owner thereof until some time in 1896. Appellant offered evidence of declarations made by Blower at various times during this period when using water for purposes of irrigation from the Little Thompson river, such declarations being to the effect that at such dates he claimed to be the owner of the priority in question, and that he was exercising the rights thereunder in his then irrigating therefrom. This evidence was for the purpose of showing that he did not intend to abandon and had not abandoned as late as 1896 the rights decreed to ditch No. 9 under said decree. Other declarations of like character by Blower at the time of his use of the water in question were excluded by the court as self-serving declarations.

These declarations were admissible as an exception to the general rule excluding hearsay statements. They were admissible as declarations evidencing the mental condition of the declarant; that is, that he did not intend by a disuse of his ditch to abandon the water right decreed thereto, and that he was intending to exercise such water right by his diversion through other head gates.

The rule is that when it is material to prove the state of a person's mind or what were his intentions you may prove what he said, because that is a means by which you can find out what his intentions were.— Greenleaf on Evidence, vol. 1 (16th ed.), §§ 162a, 162c.

Application of this principle of evidence has been made in this state.

*Starr v. The People,* 17 Colo. 458, was an injunction against obstructing a public highway. The defendant claimed the *locus in quo* as his private property, and denied the same was a public highway. The court held the acts and declarations of the owner in his own favor connected with the matter of the alleged dedication of the highway were admissible.

In *City of Denver v. Jacobson,* 17 Colo. 498, trespass was brought against the city for tearing down a fence built by plaintiff Mrs. Jacobson upon a certain strip of land of which she claimed ownership. The city justified upon the ground that the strip of land had been dedicated by the plaintiff's husband. The declarations of plaintiff's deceased husband in his own favor made in connection with the acts which were claimed to constitute the dedication were rejected by the lower court. Because of this exclusion the case was reversed, the upper court holding that such declarations were admissible for the purpose of showing the intent of the declarant

at the time the acts were done which were claimed to constitute the dedication.

In *Mutual Life Insurance Company v. Hillman,* 145 U. S. 285, the question before us was considered at length. The action was upon a life insurance policy, the insured being one Hillman, and the action being by the beneficiary, his wife. It was claimed that Hillman had died. The vital question was whether the dead body produced as that of the insured was so in truth or was that of one Walters. On March 2 Walters wrote letters to his betrothed and others declaring his intent to accompany Hillman and a third party. It was contended by the insurance company that Walters died on March 5, in company with Hillman, and that his body had been buried as that of Hillman. The letters written on March 2 were introduced for the purpose of showing his intent to travel with Hillman and as tending to show that he was with Hillman on March 5, and that the body in question was his body, and not that of Hillman. The lower court excluded the evidence as hearsay. The case was reversed for error in this ruling. The court in the course of its opinion said:

"A man's state of mind or feeling can only be manifested to others by countenance, attitude or gesture, or by sounds or words, spoken or written. The nature of the fact to be proved is the same, and evidence of its proper tokens is equally competent to prove it, whether expressed by aspect or conduct, by voice or pen. When the intention to be proved is important only as qualifying an act, its connection with that act must be shown, in order to warrant the admission of declarations of the intention. But whenever the intention is of itself a distinct and material fact in a chain of circumstances it may be proved by contemporaneous oral or written declarations of the party.

"The existence of a particular intention in a certain person at a certain time being a material fact to be proved, evidence that he expressed that intention at that time is as direct evidence of the fact as his own testimony that he then had that intention would be. After his death there can hardly be any other way of proving it; and while he is still alive, his own memory of his state of mind at a former time is no more likely to be clear and true than a bystander's recollection of what he then said and is less trustworthy than letters written by him at the time and under circumstances precluding a suspicion of misrepresentation."

We do not find it necessary to consider the other questions presented as grounds for a reversal.

Judgment reversed.                    *Reversed.*

Chief Justice Gabbert and Mr. Justice Maxwell concur.