No. 10,829.

ESTATE OF FOLEY.

FOLEY v. GAVIN, ADMINISTRATOR.

Decided November 10, 1924. Rehearing denied December 1, 1924.

Petition for appointment as administratrix. Petition denied.

*Affirmed.*

1. PLEADING—*Marriage.* Marriage is an ultimate fact, and no allegation of detail, except time and place and manner, is necessary or proper.

2. EVIDENCE—*Marriage.* Where a couple are living together, declarations of the man denying that he was married, and conduct consistent therewith subsequent to the claimed marriage, held properly admitted as evidence of his intent in living with the woman, and as to that question a part of the res gestae.

3. APPEAL AND ERROR—*Evidence.* Where a party and her witnesses admitted and proved a certain fact, she could not complain of the other evidence of that fact.

4. MARRIAGE—*Presumption*—*Cohabitation.* Cohabitation is presumed to be matrimonial, but the presumption is one of fact, not of law.

5.  ' *Agreement.* An agreement to live together as man and wife does not necessarily constitute a marriage. The agreement is open to the interpretation of an illicit relation resembling marriage.

6.    *Common-Law.* Where a woman claiming to be the widow of deceased, petitioned to be appointed administratrix of his estate, a finding that there was no marriage, held justified by the evidence.

*Error to the District Court of Pueblo County, Hon. Samuel D. Trimble, Judge.*

Mr. N. WALTER DIXON, Mr. JOHN K. VOORHEES, for plaintiff in error.

Mr. M. G. SAUNDERS, Mr. E. F. CHAMBERS, for defendant in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

THE plaintiff in error petitioned the county court of Pueblo county to be appointed administratrix of the estate of Timothy H. Foley, and for the removal of Austin Gavin, defendant in error, as such administrator. She claimed to be his widow. On trial it.was determined she was not. She appealed to the district court with the same result, and brings the case here for review.

Defendant in error claims that the petition does not state sufficient facts because it does not sufficiently state the marriage. We think it states more than necessary. Marriage is an ultimate fact and no allegation of detail, except time and place and manner, is necessary or proper.

Plaintiff in error relies upon an alleged express oral contract, said to have been made in August, 1909, between her and the deceased, which is evidenced by the testimony of Stella Forbes, her sister, William Forbes, her brother-in-law, and Edith Williams, her sister, that on Labor Day,

1909, Foley with the plaintiff in error, then called Mrs. Kniffen, Mrs. Williams and Mr. and Mrs. Forbes, were at the Forbes residence. Mrs. Kniffen, Mrs. Williams and Mrs. Forbes were in the kitchen; Foley and Forbes in the front room. Mrs. Forbes was complaining of Mrs. Kniffen that she was living in the same building in Pueblo with Mr. Foley. Foley came from the front room to the kitchen door and said: "Mrs. Forbes and Mrs. Williams, I want you to understand that Mrs. Kniffen and I have agreed to live together as man and wife and we don't care what the family thinks." Mrs. Kniffen said: "Yes; I hope you are satisfied now." Forbes came to the door and Foley turned round and asked him: "What do you think about it, Will?" Forbes said: "That is not any more than I thought." The matter was discussed upon the question how the situation should be explained. Foley said that for business reasons they preferred to keep their respective names, that she should go by the name of Mrs. Kniffen just the same. Mrs. Forbes asked how they would explain it to friends, but Foley said it didn't make any difference.

Foley and Mrs. Kniffen previous to this time had been living in a block belonging to Foley in Pueblo, she with her son twelve years old in one end of the block, and he in the other, the rest of the block being empty. Shortly after this Foley moved into her room and they cohabited together from that time until his death in 1922, she under the name of Kniffen. During that time there is evidence that she denied that her name was Mrs. Foley, that she denied her marriage and stated that Foley was not married; that she signed deeds and other papers by the name Kniffen. Foley died January 2, 1922. The present administrator, his half-brother, was appointed January 6th. She made no movement till January 18th, when she applied for letters. During this delay she was sworn as a witness in another case and then testified that her name was Lillian Kniffen. It was also shown that Foley made similar statements and returned his income tax schedule

under oath as a single man though marriage would have saved him a considerable sum.

The plaintiff in error makes the following points:  (1) That declarations of Foley denying that he was married and conduct consistent therewith subsequent to the alleged marriage were erroneously admitted in evidence; (2) that evidence oral and documentary that the petitioner during her alleged coverture was known by the name of Lillian Kniffen and transacted all of her business in that name was erroneously admitted, and (3) that the evidence was conclusive in her favor.

As to the first point the claim is made that such declarations are competent only if the complainant has relied upon reputation to prove the marriage and are incompetent where the sole reliance is upon direct evidence of an express contract.  He cites *Hill v. Hill's Admr.*, 32 Pa. 511; *Hull v. Rawls,* 27 Miss. 471, 473; *Thompson v. Nims,* 83 Wis. 261, 53 N. W. 502, 17 L. R. A. 847; *Hulett v. Carey,* 66 Minn. 327, 69 N. W. 31, 34 L. R. A. 384, 61 Am. St. Rep. 419; *Estate of James,* 124 Cal. 653, 57 Pac. 578, 1008. But we agree rather with *Drawdy v. Hesters,* 130 Ga. 161, 60 S. E. 451, 15 L. R. A., (N. S.) 190, 193; *Topper v. Perry,* 197 Mo. 531, 95 S. W. 203, 114 Am. St. Rep. 777; *Imboden v. St. Louis Trust Co.,* 111 Mo. App. 220, 86 S. W. 263; *Craufurd v. Blackburn,* 17 Md. 49, 77 Am. Dec. 323; *Barnum v. Barnum,* 42 Md. 251, permitting such evidence, and other cases cited in plaintiff in error's own brief to the effect that such evidence is of light weight, conceding its competency.

In the present case, however, defendant does not rely solely upon direct evidence of an express marriage contract.  She proved, at length and in detail, cohabitation, which is the most important element in the qualities of habit and repute so often referred to in this class of cases, habit of marriage consisting in cohabitation and other conduct usual in married persons.  The declarations of Foley that he was not married, while not in themselves competent evidence of that fact, are conduct evidencing

his intent and so characterizing the cohabitation which he was then having with Mrs. Kniffen. They are, as to that, a part of the res gestae. The declarations of a man accompanying his acts are competent in his favor to show his intent in such acts. *Drawdy v. Hesters, supra; Central Trust Co. v. Culver,* 35 Colo. 93, 96, 83 Pac. 1064; *Starr v. People,* 17 Colo. 458, 30 Pac. 64; *Denver v. Jacobson,* 17 Colo. 497, 30 Pac. 246; *Mutual Ins. Co. v. Hillmon,* 145 U. S. 285, 12 Sup. Ct. 909, 36 L. Ed. 706. Upon the second point, the fact that Mrs. Kniffen continued to use the name of Kniffen, her former husband, was admitted, indeed proved, by her own witnesses; therefore she cannot complain of the admission of other evidence of that fact.

As to the sufficiency of the evidence it is enough to say that the evidence was in conflict, and the court has found against the plaintiff in error; but the weight of the evidence is against her. We do not agree with her contention that the evidence above quoted shows necessarily a contract to marry. It is true that cohabitation is presumed to be matrimonial; but that is a presumption of fact, not of law. When therefore there is evidence against the marriage, the cohabitation becomes an item of evidence ·to be considered with all other such items, and it is strong or weak according to the circumstances. An agreement to live together as man and wife has been held not to be marriage. *Letters v. Cady,* 10 Cal. 533. It is open to the interpretation of an illicit relation resembling that of marriage. *Thimgan v. Mathews,* 74 Colo. 93, 219 Pac. 211. There is evidence indicating that that is what was meant by Foley. Mrs. Forbes is upbraiding Mrs. Kniffen for putting herself in a compromising position—not accusing her of marrying Foley. If there had been a real marriage the natural thing for him to say would be, "Don't complain any more, we are married;" but Foley overhearing the talk, steps forward and says: "We have agreed to live together as man and wife, and we don't care what the family thinks." These are words of defiance. It does not appear that the family had any reason to think ill of a

marriage between him and Mrs. Kniffen, or that he had any reason to believe that they would think so. The women were "stunned," "dumbfounded," at his statement. If it were an announcement of a marriage, it would have been a proper occasion for congratulations. It was discussed, how the situation was to be explained. The statement that they were married would be a complete explanation.

Much is said in argument about the effect of Mrs. Kniffen retaining that name. It may be, and it has been held, that a married woman may by agreement with her husband retain her maiden name; but its retention is a most unusual proceeding, tends to characterize the cohabitation as illicit, and so throws doubt upon other evidence of the marriage. If she had gone about for the thirteen years of her life with Foley, telling all her friends, "My name is Kniffen; I am married to Mr. Foley, but we have agreed that I shall retain the name of Kniffen," the situation would be very different from what it is; but there is evidence which we must suppose the court believed that she denied her marriage and acted inconsistently with marriage as stated above.

The finding was justified by the evidence and the judgment is affirmed.

MR. CHIEF JUSTICE TELLER not participating.